UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HOLLY HOLDAWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-CV-219- DCP |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 14].  Now before the Court are

Plaintiff's Motion for Judgment on the Administrative Record [Doc. 15] and Defendant's Motion

for Summary Judgment [Doc. 18].  Holly Holdaway ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Kilolo Kijakazi

("Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and will

**GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On October 13, 2015, Plaintiff filed an application for disability benefits pursuant to Title

II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* [Tr. 145, 177, 573–80].[1]  Plaintiff claimed

a period of disability that began on August 31, 2014 [*Id.* at 574].  After her application was denied

---

[1]    While Plaintiff states in her Complaint [Doc. 1 p. 1] and Brief in Support of Motion for
Judgment on the Administrative Record [Doc. 16 p. 1] that she filed an application for disability
benefits under both Title II and Title XVI of the Social Security Act, the cited portions of the
record reflect a filing under Title II.  Nevertheless, "[t]he Commissioner's regulations governing
the evaluation of disability for DIB and SSI are identical. . . and are found at 20 C.F.R. § 404.1520,
and 20 C.F.R. § 416.920 respectively."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

initially [*id.* at 224–27] and on reconsideration [*id.* at 231–37], Plaintiff requested a hearing before an ALJ [*Id.* at 239–40]. A hearing was held on July 6, 2017 before ALJ Suhirjahaan Morehead ("ALJ Morehead") [*Id.* at 121–44]. On October 19, 2017, ALJ Morehead found that Plaintiff was not disabled [*id.* at 174–88], and Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 198]. On January 18, 2019, the Appeals Council vacated the hearing decision and remanded the case for further consideration [*Id.* at 189–95]. Two supplemental hearings were conducted, one on September 18, 2019 [*id.* at 89–107] and the other on October 23, 2019 [*Id.* at 76–88]. On November 15, 2019, ALJ Morehead found Plaintiff was not disabled [*Id.* at 196–217]. Again, Plaintiff requested the Appeals Council review the ALJ's decision, and the Appeals Council remanded the case for further consideration on April 23, 2020 [*Id.* at 218–23]. On April 27, 2021, a hearing was conducted before ALJ Lauren Benedict (hereinafter "ALJ Benedict" or "the ALJ") [*id.* at 45–75], who found that Plaintiff was not disabled on May 18, 2021 [*Id.* at 11–44]. The Appeals Council subsequently denied Plaintiff's request for review on August 29, 2022 [*id.* at 1–7], making ALJ Benedict's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 26, 2022, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed competing dispositive motions [Docs. 15, 16, 18, 19, 20], and this matter is now ripe for adjudication.

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A. Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be

2

considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her*

3

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## B. The ALJ's Findings

ALJ Benedict made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 31, 2014 through her date last insured of December 31, 2019 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: obesity; valgus ankle, bilaterally; bipolar disorder; depression; panic disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand/walk 4 of 8 hours, which would allow for a sit/stand option at 30 minute intervals; she cannot climb ladders, ropes, or scaffold, or crawl, but she can perform other postural activities occasionally; she cannot work around unprotected heights or moving mechanical parts, or use of foot controls; she can understand, remember and carryout simple, routine tasks; she can maintain concentration, persistence, and pace for those tasks with customary work breaks; she can have no contact with public, and occasional contact with co-workers and supervisors; she cannot perform team tasks; and she can adapt to gradual and infrequent change.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 20, 1980 and was 39 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

4

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 31, 2014, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

[Tr. 17–35].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

5

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed

6

waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    ANALYSIS

Plaintiff argues that ALJ Benedict's decision is not supported by substantial evidence because the ALJ erred "in failing to properly consider and account for the results of extremely important psychological testing and updated narrative explanation from Dr. Hayes and rejecting this evidence without sufficient basis for doing so" [Doc. 16 pp. 8–15]; in rejecting the opinions of Dr. Mullady and Dr. Urbaniak [*id.* at 15–20]; and in failing to consider her moderate difficulties in maintaining concentration, persistence, and pace in her RFC [*Id.* at 20–24].   The Commissioner responds that the ALJ's decision is supported by substantial evidence because she "reasonably weighed the differing opinions in assessing mental limitations" in her RFC [Doc. 19 pp. 5–14] as well as "relating to Plaintiff's physical limitations" [*id.* at 14–20]; and the hypothetical question and RFC finding "accounted for Plaintiff's difficulties in concentration, persistence, and pace" [*Id.* at 20–24].   Upon review, the Court finds that Plaintiff has not presented a valid basis for disturbing the Commissioner's decision or remanding the case for further proceedings.

### A.    The ALJ Properly Considered, Accounted for, and Discounted Dr. Hayes's Opinion with Sufficient Explanation

Plaintiff first argues that the ALJ erred in not properly considering or accounting for Dr. Hayes's explanation of psychological testing and corresponding narrative, and for rejecting Dr. Hayes's opinion without sufficient explanation [Doc. 16 pp. 8–15].   The Commissioner responds that the ALJ reasonably weighed the differing opinions on Plaintiff's mental limitations [Doc. 19 p. 5].   For the reasons discussed below, the Court finds that the ALJ gave a meaningful explanation for her decision to accord Dr. Hayes's opinion little weight, as contemplated by the regulations. *See* 20 C.F.R. § 404.1527(c)(2); *see also Ott v. Comm'r of Soc. Sec.*, No. 1:08-cv-399, 2009 WL

3199064, at *3 (S.D. Ohio Sept. 29, 2009) (noting that an ALJ "must provide meaningful explanations for the weight they give to a particular medical source").

Dr. Hayes performed assessments of Plaintiff in May and June 2016, and the results from those assessments were before ALJ Morehead during the hearing in 2019 [Tr. 827–61]. However, the results only included raw data and did not include a narrative explanation from Dr. Hayes. ALJ Morehead found the raw data unhelpful, stating during the 2019 hearing, "I don't really understand this record because it's a very long form but then it doesn't really have any note[] from the doctor" and describing it as "of minimal use to me" [*Id.* at 126 (citing to Exh. 8F)]. After the hearing, ALJ Morehead was instructed by the Appeals Council in their January 18, 2019 order to obtain a narrative explanation for Dr. Hayes's evidence [*Id.* at 189, 191].

Subsequent to this request, Dr. Hayes provided a narrative explanation of the assessments conducted in 2016 [*Id.* at 1015–18]. Dr. Hayes's explanation stated, "[Plaintiff] was seen twice on 05/04/16 and 05/09/16 for evaluation and assessment as part of her application for disability" and listed seven assessments that had been completed [*Id.* at 1016].[2] Dr. Hayes explained that she had "reviewed these assessments and the Mental Health Evaluation [she] did on 06/28/17[3]" and

---

[2]    While Dr. Hayes's notation implies that all of the listed assessments, including the MMPI-2, were performed on either May 4 or May 9, 2016, the Court notes that the date of the MMPI-2 is June 8, 2016 [Tr. 828].

[3]    There does not appear to be a June 28, 2017 report by Dr. Hayes in the record. As pointed out by Plaintiff, the ALJ noted that "[Dr. Hayes] reported she has previously written a report but that report was never placed in [the] disability file (and apparently still has not been added)" [Doc. 16 at 11 (citing to Tr. 30)]. Defendant seemingly maintains that the reference to June 2017 was in error, noting the correct date of Dr. Hayes's evaluation as June 2016 [Doc. 19 p. 7]. Assuming there was a report by Dr. Hayes dated June 18, 2017, Plaintiff argues that the ALJ had a duty to request this missing report [Doc. 16 p. 12 (citing to SSR 17-4p and 20 C.F.R. § 404.1520b)]. As SSR 17-4p makes clear, however, the plaintiff has "the primary responsibility. . . to provide evidence in support of their disability or blindness claims." SSR 17-4p, 2017 WL 4736894, at *1 (Oct. 4, 2017). An ALJ may contact a medical source for additional evidence if the evidence is found to be insufficient to make an informed determination as to whether the claimant is disabled. *See* 20 C.F.R. § 404.1520b. In this case, there is no reason to think that the ALJ found the

that she had written the following on or around the time of her evaluation of Plaintiff:

> This 37 year old woman[4] has severe health problems. She has panic attacks. When working, she would get overwhelmed and have to call her mother to come get her. The testing confirms severe anxiety and deep depression. She is severely socially withdrawn and cannot be around a lot of people. She has P.T.S.D. also.

[*Id.* at 1016]. Regarding Plaintiff's ability to work, Dr. Hayes noted that the MMPI-2 showed "Extreme Depression, Extreme Anxiety, and Severe Social Withdrawal" which "impact [Plaintiff's] life and her ability to maintain gainful employment" [*Id.* at 1017]. Further, Dr. Hayes found that "[t]he Mental Health Evaluation (06/28/17)[5] indicates the very real problems she would have, trying to maintain a 40 hour week work schedule" [*Id.*]. Dr. Hayes concluded that Plaintiff:

> has not had medical insurance, thus, she does not have extensive records to establish the validity of her mental and physical impairments. While the majority of these assessments are self-reporting, that cannot be used to say she does not experience these levels of anxiety and depression. . . . Yet her emotional, mental, and physical problems came through loud and clear. . . . She walked with difficulty and had trouble sitting very long because of her back problems. She also has thyroid problems and deformed ankles.

[*Id.* at 1018]. [6]

---

evidence was insufficient. Further, this was not the only reason ALJ Benedict provided for giving Dr. Hayes's opinion little weight.

[4] Plaintiff was born on November 20, 1980 [Tr. 1016], which means she was 35 at the time she visited Dr. Hayes in May and June 2016, and part of Dr. Hayes's note states as much [*Id.* ("[t]his 35 year old woman was seen twice on 05/04/16 and 05/09/16")]. This would also mean that Plaintiff was 36 in June 2017; however, Dr. Hayes's narrative description that she contends was written on or around the time of the "Mental Health Evaluation [she] did on 06/28/17" mentions Plaintiff is a "37 year old woman" [*Id.*].

[5] *See supra* note 3.

[6] Plaintiff contends that portions of Dr. Hayes's narrative report were prepared contemporaneously with her examination of Plaintiff [Doc. 16 p. 11]. Regardless, that the report was not prepared concurrently with the evaluation of Plaintiff was not the only reason cited by the ALJ for discounting Dr. Hayes's opinion.

9

In evaluating medical opinions, the regulations require that, unless the opinion of a treating source is entitled to controlling weight, [7] an ALJ must evaluate all medical opinions according to the 20 C.F.R. § 404.1527(c) factors, regardless of their source. *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999). These factors include "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Williamson v. Comm'r of Soc. Sec.*, No. 1:14–cv–731, 2016 WL 255033, at *8 (S.D. Ohio Jan. 20, 2016); *see also* 20 C.F.R. § 404.1527(c). "ALJs should 'explain the weight given' such opinions, 'or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case.'" *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 921 (S.D. Ohio 2016) (citing to *Williamson*, 2016 WL 255033, at *8). However, it is not necessary that an ALJ give "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x. 802, 804 (6th Cir. 2011) (citation omitted).

Here, the Court finds that ALJ Benedict sufficiently explained why she afforded Dr. Hayes's report little weight and how she considered the factors as outlined in 20 C.F.R. § 404.1527. For example, the ALJ found that Dr. Hayes did not prepare the report concurrently with the

---

[7] This case is analyzed under 20 C.F.R. § 404.1527 because it was filed before the regulations were amended on March 27, 2017. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c. The previous version of the regulation included the "treating physician rule," which "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R.§ 404.1527(c)(2)).

evaluation but wrote it three years later [Tr. 30]. ALJ Benedict also found that Dr. Hayes's conclusions on the severity of Plaintiff's conditions were not otherwise supported by the medical record "and by the mental health records specifically, which note basic stability when [Plaintiff] is in treatment and compliant with medication" [*Id.*]. Further, the ALJ determined the report to be "not particularly helpful" because Dr. Hayes used undefined terms such as "severe," "extreme," and "beyond" that are not typically used in Social Security determinations [*Id.*]. In addition, the ALJ noted that Dr. Hayes refers to a previous written report she had prepared but that the report was not included in the record [*Id.*].[8] The ALJ also maintained that Dr. Hayes did not provide any specific limitations but rather made statements that "go more to the legal conclusion of disability, which is an issue reserved to the Commissioner and such statements are not entitled to any special weight or consideration" [*Id.* at 30–31]. Finally, ALJ Benedict concluded:

> Importantly, [Dr. Hayes's] assessment and comments are not supported by the mental health record that was present at the time she first evaluated the claimant, nor during any period through December 2019. She makes speculative comments about the claimant lacking insurance as a basis for a poor treatment record, at that time, as well as commented on various physical complaints, but she has no obvious expertise in addressing physical issues and she does not appear to have had any independent knowledge as to the claimant's financial or insurances status, so these comments appear to be a repetition of self-reported circumstances.

[*Id.* at 31]. These reasons sufficiently support the little weight that the ALJ gave Dr. Hayes's opinion.

Further, Plaintiff maintains that the ALJ erroneously discredited Dr. Hayes's opinion "in part due to [Dr. Hayes's] findings that there was no indication of a bipolar disorder" [Doc. 16 p. 14 (citing Tr. 30)]. In evaluating Dr. Hayes's opinion, the ALJ noted that "[d]espite [Dr. Hayes's] comments that the 'mood disorder' screen had shown no indication of a bipolar disorder, I note

---

[8]     *See supra* note 3.

that [Plaintiff's] treatment has been primarily for a bipolar disorder with some anxiety and depression" [Tr. 30]. However, Plaintiff argues that Dr. Hayes's opinion is supported by Dr. Alfred Jonas's ("Dr. Jonas") determination that there was no support for a bipolar disorder diagnosis, and yet, the ALJ never addresses that fact [Doc. 16 p. 14].

The Court finds that the ALJ was not bound to accept Dr. Hayes's opinion nor compare Dr. Hayes's with Dr. Jonas's opinion to which she gave no weight. In assigning little weight to Dr. Hayes's opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, noted that it was not prepared concurrently with her examination, made speculative comments, and made legal conclusions reserved for the ALJ. Procedurally, the regulations require no more. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 805 (6th Cir. 2011). Furthermore, Plaintiff's argument that Dr. Hayes's opinion is supported by that of Dr. Jonas is of no consequence because the ALJ ultimately gave no weight to Dr. Jonas's opinion, and Plaintiff does not challenge that finding on appeal. *See Yvetta H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-2904, 2022 WL 2352453, at *7 (S.D. Ohio June 30, 2022) (citing *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001)) ("Plaintiff points to Dr. Reese's 2019 opinion as demonstrating that her migraines and mental health impairments were severe. Plaintiff, however, does not challenge the ALJ's assessment of this opinion, and the ALJ was not required to rely on an unsupported medical opinion[.]"). In reviewing Dr. Jonas's responses to the mental impairment interrogatories that were propounded to him, the ALJ noted the responses were not helpful and contained a lot of speculation [Tr. 32]. Further, in explaining her reasons for rejecting Dr. Jonas's opinion, the ALJ pointed to Dr. Jonas's conclusion that "there was insufficient evidence to allow him to form an opinion about the nature and severity of the [Plaintiff's] impairments" making "any other

12

comments suspect" [*Id.* at 32].[9]  Thus, the ALJ properly considered the opinions of both Dr. Hayes and Dr. Jonas and sufficiently explained the reasons for discounting each of them.

Finally, Plaintiff contends that based on the ALJ's improper rejection of "the evidence, findings, and opinions from Dr. Hayes . . . the ALJ's decision lacks the support of substantial evidence" [Doc. 16 p. 15].  However, Plaintiff's disagreement with the ALJ's decision to afford Dr. Hayes's opinion little weight does not render the ALJ's decision unsupported by substantial evidence as the ALJ is charged with the responsibility of reasonably and meaningfully weighing all of the opinion evidence.  *See* 20 C.F.R. § 404.1527(c).  Here, with respect to the opinion evidence relating to Plaintiff's mental limitations, while the ALJ discounted Dr. Hayes's opinion, the ALJ ultimately accommodated Plaintiff's anxiety and depression in the RFC and supported this finding with substantial evidence, namely by citing to Dr. Olin Hamrick's opinion.

Dr. Hamrick is a medical expert in psychology and provided testimony at Plaintiff's October 2019 hearing [Tr. 79].  Dr. Hamrick reviewed the medical evidence that was present at the time of the hearing and found that Plaintiff had the following severe impairments: major depressive disorder versus bipolar disorder, and anxiety, not otherwise specified [*Id.* at 80].  Dr. Hamrick testified that he did not "see any good evidence of panic disorder, symptoms that were discrete enough to support that diagnosis" but he did find enough to conclude Plaintiff had severe anxiety [*Id.*].  When the ALJ inquired about how these severe impairments may limit Plaintiff, Dr. Hamrick stated that he believed "there is no greater than moderate limitation of any of the [paragraph] B criteria . . . and that's giving some benefit of the doubt and taking into account the

---

[9]      The ALJ further listed other reasons for discrediting Dr. Jonas's opinion such as that he noted Plaintiff's diagnoses were "unclear" or "unsupported"; he did not analyze the paragraph B criteria but concluded that Plaintiff "'probably' had [a] marked limitation in interacting with others"; and that it was unclear from Dr. Jonas's opinion whether Plaintiff met or medically equaled any of the listings [Tr. 32].

13

[Plaintiff's] and her mother's comments about her activities or daily living and her symptoms" [*Id.* at 80–81]. To support this conclusion, Dr. Hamrick noted that the record demonstrated that Plaintiff's depression and anxiety "waxed and waned" and she has been on and off treatment [*Id.*]. Dr. Hamrick did not view Dr. Hayes's report as "an acceptable medical legal document" because it was "35 pages of raw data with no narrative report, which is very unusual and would not be accepted at the State Agency level as a legitimate psychological evaluation" [*Id.* at 81]. Dr. Hamrick testified that he would impose the following limitations: (1) simple, routine, repetitive tasks due to her lower I.Q. score, history of learning problems, and difficulties with perceptual motor functioning when she was younger; (2) no more than occasional contact with the public, coworkers, and supervisors "within what is necessary in a simple, unskilled setting"; (3) "no more than occasional requirements to adapt to changes in the work tasks"; (4) "a lower stress environment not involving any rapid paced activities or high production quotas" to account for Plaintiff's complaints of anxiety; and (5) "to work with things rather than people" [*Id.* at 82–83].

The ALJ found that Dr. Hamrick's opinion was supported by the medical record and afforded his opinion "significant weight" [*Id.* at 31]. The ALJ noted in her decision that Dr. Hamrick's opinion "is generally consistent with the [Plaintiff's] self-reported psychological symptoms" specifically that her symptoms as well as her treatment are intermittent [*Id.*]. Further, the ALJ noted that Dr. Hamrick did not have certain medical records before him that were entered into the record after his testimony in October 2019 [*Id.*]. Therefore, the ALJ "found [Plaintiff] should have slightly greater limitations than described by Dr. Hamrick, especially in social interaction, especially with the public, and should not be required to do work that requires teamwork" [*Id.* at 32]. The ALJ states later in her decision that the medical record documents instances in which Plaintiff reported that her symptoms of depression and anxiety were bettered by medicinal treatment, but that she does not take those medications, even within the span of the

14

same visit [*Id.* at 33]. Moreover, although Plaintiff argues that her depression, anxiety, and panic attacks are disabling, Plaintiff testified at the October 2019 hearing that she does not have an explanation for why she has not received mental health treatment for the last three years [*Id.*]. *See also Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir. 2007) (holding that even "modest treatment. . . is inconsistent with a finding of disability").

Therefore, the Court finds that the ALJ properly considered Dr. Hayes's opinion and sufficiently explained why she found it of "little weight." Further, the ALJ's finding that Plaintiff's mental limitations amounted to only a moderate impairment was supported by substantial evidence and were accommodated in the RFC.

### B. The ALJ Properly Considered, Accounted for, and Discounted Dr. Mullady's and Dr. Urbaniak's Opinions with Sufficient Explanation

Next, Plaintiff argues that the ALJ erred in rejecting without sufficient support the opinions of Dr. Thomas Mullady and Dr. Henry Urbaniak "who both opined that Plaintiff is limited to a reduced range of sedentary work" [Doc. 16 p. 15]. For the reasons explained below, the Court finds that ALJ Benedict properly considered the opinions of Dr. Mullady and Dr. Urbaniak, and fully explained why she gave them little weight.

#### 1. Dr. Thomas Mullady, M.D.

Plaintiff saw Dr. Mullady on January 6, 2016 after she was referred to him by the Department of Human Services [Tr. 799–802]. Dr. Mullady reported that Plaintiff's "chief complaint" was low back pain and that Plaintiff reported having low back pain for the past ten years but had not received a diagnosis nor treatment [*Id.* at 799]. Dr. Mullady noted in the "Diagnoses" section of his report: (1) alleges back pain (2) essential hypertension, and (3) exogenous obesity [*Id.* at 800–01]. In addition, he found that Plaintiff had no peripheral edema, no gross joint deformities, decreased hip flexion to ninety degrees bilaterally secondary to obesity,

15

that her other range of motion in her hip joints are normal, that she has "decreased knee flexion bilaterally to 120 degrees secondary to obesity," and that she had a wing-foot type gait but does not use an assistive device to walk [*Id.* at 800].

In relation to Plaintiff's abilities, Dr. Mullady concluded that Plaintiff has the "capacity to occasionally lift and/or carry for up to one-third to two-thirds of an eight-hour workday any amount of weight . . . able to stand and/or walk with normal breaks for about two hours in an eight-hour workday and would be able to sit with normal breaks for at least six hours in an eight-hour workday" [*Id.* at 801]. Additionally, Dr. Mullady noted that Plaintiff "suffers from recurring panic attacks, episodes of anxiety and depression" and that Plaintiff reported that she "had great difficulty tolerating stress at her job and has difficulty with mental concentration and reading comprehension" [*Id.* at 799].

### 2. Dr. Henry Urbaniak, M.D.

Dr. Urbaniak is a board-certified orthopedic surgeon and testified as a medical expert at the hearing on September 18, 2019 [Tr. 89, 95]. After reviewing the record at that time, Dr. Urbaniak found that Plaintiff "has joint pain, difficulty walking, swelling of her extremities," a waddling gait, and ankle pain [*Id.* at 101–02]. He further opined that Plaintiff needed an orthopedic evaluation to complement the other data in the record [*Id.* at 102]. Dr. Urbaniak determined that Plaintiff has an impaired gait in her ankles and feet, but he could not define the severity of the impairment [*Id.*]. However, Dr. Urbaniak testified that Plaintiff could not "do a normal six-plus hours stand and walk with a cane" [*Id.*]. The ALJ asked Dr. Urbaniak if he was able to assess Plaintiff's limitations based on the record [*Id.* at 102–03]. He responded that Plaintiff would be limited to "a residual functional capacity of sedentary, just putting these facts together and the bad ankles and feet and she's already limping and . . . there are problems there with ankle pain" [*Id.*]. Dr. Urbaniak also testified that he does not know whether Plaintiff would need to elevate her lower

16

extremities throughout the day because that would not be "appropriate in a workforce" [*Id.* at 103].

### 3. The ALJ properly considered Dr. Mullady's and Dr. Urbaniak's opinions

Plaintiff argues that the ALJ erred in affording Dr. Mullady's opinion "only some weight" and in finding his opinion not supported by his examination findings [Doc. 16 pp. 18–19]. Plaintiff asserts that Dr. Mullady's examination showed a variety of physical symptoms including "marked obesity, decreased bilateral hip range of motion, and decreased range of motion of the bilateral knees" [*id.* at 18 (citing to Tr. 800)], which Plaintiff maintains specifically supports his opinion [*Id.* at 18–19]. The Commissioner responds that the ALJ considered Dr. Mullady's opinion and found that his limitation to sedentary work was not consistent with his findings nor the record as a whole [Doc. 19 pp. 16–20].

Similarly, Plaintiff asserts that the ALJ erroneously gave Dr. Urbaniak's opinion little weight, in part, because she found that Dr. Urbaniak's testimony regarding Plaintiff putting her feet up was "not supported by the treatment record, which does not support chronic edema for which there would be any need to routinely elevate the legs" [Doc. 16 p. 19 (citing Tr. 31)]. However, Plaintiff maintains that the ALJ mischaracterized Dr. Urbaniak's testimony, "as he did not testify she would need to elevate her legs. . . . As such, this is a completely erroneous finding by the ALJ" [*Id.*]. While the Court agrees that the ALJ mischaracterized part of Dr. Urbaniak's opinion,[10] as discussed more fully below, the Court nevertheless finds that the ALJ properly

---

[10]    During the hearing, Plaintiff's counsel asked Dr. Urbaniak "[w]ould it be medically reasonable that [Plaintiff] would need to elevate her lower extremities off and on during the day to help with that swelling?" [Tr. 103]. Dr. Urbaniak responded,

> I'm going to say I don't know and it's probably not likely going to make any difference, but the only way you can elevate your legs, Counselor, is you get in bed and stick them on a pillow. Elevating in most person's mind is putting your foot out on a footstool, which actually does nothing because the ankle is below the heart level.

17

weighed his opinion.  The Commissioner responds that it is part of the ALJ's function to resolve conflicts between opinions on the record [Doc. 19 p. 18].  Further, the Commissioner argues that the ALJ properly considered Dr. Urbaniak's opinion and found it was unsupported by conflicting evidence on the record that more accurately reflected Plaintiff's physical capabilities [*Id.* at 14–20].

The ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Robinson v. Comm'r of Soc. Sec.*, 180 F. Supp. 3d 497, 500 (S.D. Ohio 2016) (citing *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001)).  In other words, it is not enough to disrupt the Commissioner's decision that evidence exists on the record that conflicts with the ALJ's decision.  While ALJs are required to provide "good reasons" for giving less than controlling weight to a treating physician's opinion, they are not under a "reasons-giving requirement" when weighing medical opinions of non-treating physicians. *Martin v. Comm'r of Soc. Sec.*, 658 Fed. App'x 255, 259 (6th Cir. 2016); *see also Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x 267, 273 (6th Cir. 2015).  However, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

While Dr. Mullady's and Dr. Urbaniak's limitations to sedentary work conflict with the ALJ's RFC determination that Plaintiff is capable of light work [Tr. 21], the ALJ fully explained

---

[*Id.*].  Dr. Urbaniak continued to state that he did not believe that fully elevating her legs would be appropriate in a workplace setting [*Id.*].  The Court finds that Dr. Urbaniak did not provide an opinion on whether or not Plaintiff would need to elevate her legs during the workday.  Instead, Dr. Urbaniak clarified what it means, from his medical perspective, for Plaintiff to elevate her lower extremities.  Therefore, the ALJ partially mischaracterized Dr. Urbaniak's testimony in stating that he did, in fact, testify "regarding the need for [Plaintiff] to elevate her legs" [*Id.* at 31]; however, that is not the only reason the ALJ gave for affording Dr. Urbaniak's testimony little weight.

18

her reasoning for finding Plaintiff was capable of light work.[11]  The ALJ found that Dr. Mullady's limitation to sedentary work was not supported by his exam findings [*Id.* at 31].  She explained that Dr. Mullady noted in his report that "any reduced joint motion was due to obesity" and described a gait abnormality but found that Plaintiff "had full motion of the ankle and no strength deficits, and she did not require an assistive device" [*Id.*].  Based on these findings, the ALJ determined that the "standing and walking limitations that would restrict her to sedentary work are not supported by [Dr. Mullady's] examination findings" [*Id.*].  In addition, the ALJ found that Plaintiff's back issues "were simply allegations" at the time of Dr. Mullady's report because, even as Dr. Mullady noted, Plaintiff had not been evaluated or diagnosed with a back impairment [*Id.*].  In sum, the ALJ found that Dr. Mullady's determination that Plaintiff was limited to sedentary work was not consistent with his findings.

As for Dr. Urbaniak's opinion, the ALJ found it "not consistent with the treatment record" [*Id.*].  She found that "[w]hile mild, non-pitting edema was noted on occasion, the overwhelming majority of the medical evidence supports no ongoing problems related to edema" [*Id.*].  In addition, the ALJ noted that evidence and medical interrogatories had been placed in the record after Dr. Urbaniak's testimony in 2016 [*Id.*].  This evidence, the ALJ maintains, reflects that Plaintiff is less restricted than Dr. Urbaniak found [*Id.*].  Simply put, the ALJ stated that she gave Dr. Urbaniak's opinion little weight because it was inconsistent with other opinions [*Id.*].  This is a valid basis for discounting the opinion.  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more

---

11      Sedentary work is defined as "work [that] involve[s] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(b).  On the other hand, light work "requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time."  *Elias v. Comm'r of Soc. Sec.*, No. 17-14033, 2019 WL 1415489, at *7 (E.D. Mich. Jan. 26, 2019) (citing SSR 83-10, 1983 WL 31251, at *5), *report and recommendation adopted*, No. CV 17-14033, 2019 WL 1399944 (E.D. Mich. Mar. 28, 2019).

19

consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *see also Justice v. Comm'r Soc. Sec. Admin.*, 515 Fed. App'x. 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins."); *Johnson v. Colvin*, No. 16-CV-1059-TMP, 2018 WL 1762212, at *4 (W.D. Tenn. Apr. 12, 2018) (holding the same). The ALJ cites to other evidence on the record supporting the conclusion that Plaintiff is capable of light work. Specifically, as discussed at length in the following section, Drs. Juliao, Singh, and Fuchs all found that Plaintiff was capable of light work. Thus, the Court finds that the ALJ met all procedural and evidentiary requirements when assigning a weight to Dr. Mullady's and Dr. Urbaniak's opinions.

### 4.  ALJ's RFC determination is supported by substantial evidence

In addition to explaining why she gave Dr. Mullady's and Dr. Urbaniak's opinions only some or little weight, the ALJ's determination that Plaintiff is able to perform light work is supported by substantial evidence. The ALJ cites to three main sources of evidence to support her findings: (1) the conclusions of the Disability Determination Services ("DDS") doctors; (2) Dr. Fuch's opinion; and (3) the lack of treatment Plaintiff has pursued.

First, ALJ Benedict's decision is supported by the findings of the DDS doctors, Dr. Saul Juliao [Tr. 145–54] and Dr. Gurcharan Singh [*Id.* at 156–72]. Doctors Juliao and Singh both determined that Plaintiff could perform medium work based on their review of the record [*Id.* at 145–72]. Specifically, the doctors determined that Plaintiff could "lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for 6 of 8 hours and sit for 6 or 8 hours; could occasionally climb ladders, ropes, or scaffolds, perform other postural activities frequently due to obesity " [*Id.* at 30 (citing to Exhs. 1A and 3A)]. The ALJ considered that these opinions were made in 2016 and therefore the doctors did not examine other evidence present before the ALJ in 2020 [*Id.*]. After weighing the opinions of Drs. Juliao and Singh, as well as additional evidence

before her, the ALJ added limitations to Plaintiff's RFC including a "reduction in lifting/carrying and standing/walking" [*Id.*]. Further, while Drs. Juliao and Singh concluded that Plaintiff could stand and/or walk for six of eight hours, the ALJ limited Plaintiff to standing and walking for four hours in the hypothetical posed to the vocational expert [*id.* at 71] and RFC [*Id.* at 21].

Next, the ALJ supported her findings by giving great weight to the opinion of Dr. Louis Fuchs [*Id.* at 32]. Dr. Fuchs completed interrogatories based on Plaintiff's medical record [*Id.* at 1037–38]. While Dr. Fuchs had never examined Plaintiff, he concluded there was sufficient medical evidence to allow him "to form opinions about the nature and severity of [Plaintiff's] impairment(s)" [*Id.* at 1038]. Dr. Fuchs concluded that Plaintiff had two impairments: obesity and valgus ankle bilateral [*Id.*]. Dr. Fuchs made this determination after reviewing Dr. Mullady's examination from January 6, 2016, as well as Dr. Jesse F. Doty's[12] examinations on May 2, 2016 and February 29, 2016 [*Id.* at 863–66]. Based on Dr. Doty's and Dr. Mullady's examinations, Dr. Fuchs concluded that Plaintiff could:

> lift/carry a maximum of twenty pounds; can sit at one time for two to six hours in an eight hour day; can stand/walk at one time without interruption for two hours for a total of four hours in an eight hour day; that she cannot do foot control bilaterally but can occasionally use stairs and ramps, balance, stoop, kneel, and crouch but cannot crawl; can occasionally be exposed to unprotected heights, extreme cold, humidity, and wetness; can have frequent exposure to machinery and driving but no exposure to vibrations or extreme heat; and no limits to shopping, public transportation, or personal hygiene

[*Id.* at 1040]. The findings of Drs. Juliao, Singh, and Fuchs all support the conclusion that Plaintiff is capable of performing light work. *See* 20 C.F.R. § 220.132(b) (defining "light work"); *see also Elias*, 2019 WL 1415489, at *7 (citing SSR 83-10, 1983 WL 31251, at *5) ("By logical extension, light work requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and

---

12    Dr. Doty is an orthopedic trauma surgeon who examined Plaintiff's ankles and concluded that she had "bilateral ankle valgus with lateral impingement" and recommended continuing with conservative treatment [Tr. 863–66].

carrying up to 10 pounds in that time."). Therefore, the RFC determination is consistent with the definition of light work and is supported by medical evidence in the record.

Finally, the ALJ found that Plaintiff has "rarely reported ankle pain or sought treatment for her ankle" and her "ankle has not otherwise been the focus of treatment" [Tr. 32.]. However, the ALJ still considered and accommodated Plaintiff's physical limitations. Specifically, the ALJ gave Plaintiff "some benefit of doubt" and found "that she may have intermittent ankle pain and symptoms" that require additional functional limitations in part because Dr. Doty found that Plaintiff may require future surgery [*Id.* at 33]. For that reason, ALJ Benedict limited Plaintiff to light work where she can stand/walk for four hours and sit/stand at thirty-minute intervals [*Id.*]. The ALJ imposed further restrictions including that she "should not climb ladders, ropes, or scaffold, or crawl, but she can perform other postural activities occasionally and she should not work around unprotected heights, moving mechanical parts, or use foot controls" [*Id.*].

For these reasons, the Court finds that the ALJ properly weighed the medical evidence, explained her reasoning for doing so, and supported with substantial evidence her conclusion that Plaintiff is capable of light work.

### C.    The ALJ Accounted for Plaintiff's Mental Impairments in her RFC Determination

Finally, Plaintiff argues that the ALJ's RFC determination and hypothetical question posed to the vocational expert did not account for her impairment in concentration, persistence, and pace [Doc. 16 pp. 20–24]. The Commissioner argues that the RFC and hypothetical question did account for this limitation by restricting Plaintiff to "simple, routine tasks" and that she could "maintain concentration, persistence, and pace for those tasks with customary work breaks" [Doc. 19 p. 22 (citing to Tr. 21)]. For the reasons more fully explained below, the Court finds that the ALJ's RFC determination accommodated Plaintiff's mental limitations.

22

At the hearing conducted on August 2021, the ALJ had Ms. Lavanne Brent, a vocational expert ("VE"), testify [Tr. 70–74]. The ALJ first posed the following hypothetical to the VE with regard to Plaintiff's mental capacity:

> I would like you to assume an individual the same age, education, and work experience as the [Plaintiff]. . . . The individual could understand, remember, and carry out simple, routine tasks; maintain concentration, persistence, and pace for those tasks with customary work breaks; have no contact with the general public; and occasional contact with coworkers and supervisors; but not perform team tasks. And the individual could adapt to gradual and infrequent change.

[*Id.* at 71]. The VE testified that while such an individual would not be able to perform Plaintiff's past work under that hypothetical, there would be other jobs such an individual could perform [*Id.* at 71–72]. Specifically, the VE found jobs with light exertional levels [*Id.* at 72]. The VE then testified that there would be no jobs available with the limitations specified as well as the individual being "off task greater than ten percent of the day on a regular and sustained basis" [*Id.*].

Plaintiff's counsel cross-examined the VE and asked whether jobs would be available under the same hypothetical, but the individual would "not even occasionally be able to interact with coworkers and supervisors" [*Id.* at 73]. The VE testified that no jobs would be available in that circumstance [*Id.*].

Plaintiff argues that "the ALJ found in [the RFC] assessment and that hypothetical question that [Plaintiff] had essentially no reduction of her abilities to maintain concentration, persistence, and pace" [Doc. 16 p. 21]. Plaintiff cites to the Program Operations Manual System ("POMS") which states that the "mental abilities needed for any job" include concentrating for "approximately 2-hour segments between arrival and first break, lunch, second break, and departure" [*Id.* (citing POMS § DI 25020.010(B)(2)5)]. Plaintiff contends that the medical record shows that she has "problems with racing thoughts and poor concentration" as well as difficulties in "flight of ideas, . . . anxious and depressed mood and presentation, paranoia, poor insight, and

23

fair judgment, among other things" [*Id.* at 23 (citations omitted)].

The Court notes that Plaintiff does not argue or put forth evidence showing that she is unable to concentrate for two hours. Also, POMS is not binding. *See Wood v. Kijakazi*, No. 1:20-CV-323-TAV-CHS, 2023 WL 2664738, at *5 (E.D. Tenn. Mar. 28, 2023) ("In *Schweiker* and *Cameron*, both courts stated that P.O.M.S. has no legal force in response to the plaintiff's argument that either the ALJ or an SSA employee failed to comply with P.O.M.S., holding that failure to comply with P.O.M.S. does not give rise to a legal claim.") (citing *Schweiker v. Hansen*, 450 U.S. 785, 789–90 (1981); *Cameron v. Colvin*, Case No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016)).

In addition, an ALJ is not required to incorporate a step two determination that a plaintiff has a mild or moderate mental impairment into their RFC determination. Social Security Ruling 96-8p makes this point clear: "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (rejecting "the proposition that all impairments deemed 'severe' in step two must be included in the hypothetical"). Rather a plaintiff's RFC represents the most a plaintiff can still do despite the plaintiff's limitations. *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014) (citing 20 C.F.R.404.1545(a)(1)); *see also* SSR 96-8p, 1996 WL 374184, at *1 (a plaintiff's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

Third, the RFC accommodated Plaintiff's mild limitation in concentration, persistence, and pace by limiting her to simple, routine tasks. As the Commissioner points out, it is well established

24

in the Sixth Circuit that a moderate impairment in concentration, persistence, and pace can be accommodated through a limitation to simple, routine tasks. *See Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (limitation to "comprehend, retain, and execute simple, routine and repetitive tasks" accounted for "moderate limitation in concentration persistence, or maintaining pace"). In *Kepke v. Commissioner of Social Security*, the Sixth Circuit held "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." 636 F. App'x 625 (6th Cir. 2016). The opinion in *Kepke* clarified the Court's previous opinion in *Ealy v. Commissioner of Social Security*. 594 F.3d 504. In *Ealy*, the Sixth Circuit found that an ALJ's hypothetical question that limited plaintiff to simple repetitive tasks for two-hour segments over an eight-hour day did not accommodate the plaintiff's limitation in concentration, persistence, and pace. *Id.* at 516–17. However, the Sixth Circuit in *Kepke*, explained that the Court's holding in *Ealy* was specifically because a doctor limited the plaintiff's ability to sustain concentration to "simple repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 635 (quoting *Ealy*, 594 F.3d at 516) (internal quotations omitted). District courts throughout the Sixth Circuit have regularly applied *Kepke* to find that an ALJ's limitation to performing simple type work can account for moderate concentration deficits. *See Helper v. Kijakazi*, No. 21-1130-TMP, 2022 WL 1568742, at \*4–5 (W.D. Tenn. May 18, 2022) (finding the ALJ's limitation to unskilled work was sufficient since Plaintiff did not provide any evidence in the record of a concrete functional limitation in concentration, persistence, or pace); *Waddell v. Berryhill*, No. 2:16-CV-00162-MCLC, 2017 WL 5078557, at \*5 (E.D. Tenn. Aug. 29, 2017) (finding the ALJ considered mental limitation in RFC by limiting plaintiff to "simple repetitive, or routine tasks"); *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at \*6–7 (E.D. Mich. July 24, 2017) (finding that the ALJ considered plaintiff's depression despite

25

not providing a functional or non-exertional limitation), *report and recommendation adopted*, No. 16-CV-11818, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017).

Here, Plaintiff has not cited to any evidence in the record that provides for specific, concrete workplace, functional or non-exertional limitations pertaining to her mental limitation in concentration, persistence, and pace. Accordingly, the ALJ's limitation to simple, routine work is sufficient to portray the tasks Plaintiff can perform without being affected by her moderate limitations.

## V.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
Debra C. Poplin
United States Magistrate Judge